# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

ERIC BROWNLOW, :

    Plaintiff, :

vs. : CA 18-0182-MU

NANCY A. BERRYHILL, :
Acting Commissioner of Social Security,
                                                                       :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 22 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision

---

[1] The parties in this case waived oral argument. (*See* Docs. 20 & 23.)

(Continued)

denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

## I. Procedural Background

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on April 13, 2012, alleging disability beginning on April 12, 2012. (*See* Tr. 184-193.) Brownlow's claims were initially denied on July 3, 2012 (Tr. 130, 137 & 144-50) and, following Plaintiff's July 12, 2012 request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 153-54), a hearing was conducted before an ALJ on August 22, 2013 (Tr.101-29). On December 20, 2013, the ALJ issued a decision finding that the claimant was not disabled and (Tr. 91-97) and, thereafter, the Appeals Council denied Plaintiff's request for review on June 9, 2015 (Tr. 1-4). Plaintiff appealed the administrative denial of his claims to this Court; a remand was ordered (*see* Tr. 447-471). Following remand, a supplemental hearing was conducted on August 16, 2016. (Tr. 413-446.) On February 9, 2017, the ALJ issued another decision finding that Brownlow was not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 398-407.) More specifically, the ALJ again proceeded to the fifth step of the five-step sequential evaluation process and determined that Brownlow retains the residual functional capacity to perform those jobs identified by the vocational expert ("VE") during the supplemental administrative hearing (*compare id.* at 406 *with* Tr. 441-42). Sometime thereafter, the Plaintiff appealed the ALJ's unfavorable decision to the

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

2

Appeals Council; the Appeals Council denied Plaintiff's request for review on February 21, 2018. (Tr. 363-66.) Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to a cataract, hypertension, vision loss with pain in the eyes, headaches, depression, left shoulder pain radiating from the neck, neck pain with radiculopathy, bilateral granulomatous anterior uveitis, bilateral lacrimal gland enlargement, possible sarcoidosis, and angle closure glaucoma with iris bombe and synechiae. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3. The claimant has the following severe impairments: cataract in right eye and recurrent iritis in the right eye (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform no work requiring binocular vision. The claimant has sufficient visual acuity to handle and work with large objects and he can avoid workplace hazards.**
>
> . . .
>
> **6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**
>
> . . .

**7.** The claimant was born on July 24, 1979 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

**8.** The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

**9.** Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

**10.** Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . .

**11.** The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 400, 401, 402, 405, & 406 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform work existing in significant numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Brownlow presents three claims on appeal: (1) the ALJ failed to develop a full and fair record; (2) the ALJ's RFC assessment is not supported by substantial evidence; and (3) the ALJ's credibility determination regarding his subjective complaints is erroneous. Because the undersigned finds that the ALJ erred to reversal with respect to Plaintiff's second assignment of error, the Court has no reason to address Brownlow's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D.

7

Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ failed to link her RFC assessment—that is, work at all exertional levels with nonexertional limitations of no work requiring binocular vision but has sufficient visual acuity to handle and work with large objects and can avoid workplace hazards (Tr. 402)—to specific and substantial evidence in the record bearing upon Brownlow's ability to perform the nonexertional requirements of work. Initially, the Court starts with the recognition that the ALJ's RFC determination in her remand decision dated February 9, 2017 (Tr. 402 ("**I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform no work requiring binocular vision. The claimant has sufficient visual acuity to handle and work with large objects and he can avoid workplace hazards.")),** which is before this Court for review, is identical to the ALJ's RFC determination in her initial decision denying benefits issued on December 20, 2013 (*see* Tr. 94 ("**I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but he can perform no work requiring binocular vision, he has sufficient visual acuity to handle and**

9

**work with large objects and he can avoid workplace hazards."**)), despite the emergence of a plethora of new evidence relating to the condition of the Plaintiff's eyes after the ALJ's initial denial of benefits and which the ALJ admits in the opening of her second decision that this Court had instructed her to consider (*compare* Tr. 398 ("In its remand order, the District Court directed me to . . . [c]onsider any new evidence submitted.") *with, e.g.,* Tr. 501-06, 587-624 & 665-98 (evidence generated after the ALJ's initial denial of benefits related to the condition of Plaintiff's eyes)). Indeed, despite having evidence presented to her after her initial denial of benefits reflecting that Plaintiff's eye issues involved both eyes and included bilateral granulomatous anterior uveitis[6] and bilateral lacrimal gland enlargement,[7] the ALJ chose to "cling" to her initial denial severe impairments of cataract in the right eye and recurrent iritis[8] in the right eye (*compare* Tr. 400 ("**The claimant has the following severe impairments: cataract in right eye and recurrent iritis in the right eye**[.]") *with* Tr. 93 ("**The claimant has the following severe impairments: Cataract in right eye and recurrent iritis in right eye**[.]")), without any

---

[6] "When one has sore red and inflamed eyes and a small pupil, this person has anterior uveitis. . . . The soreness is associated with the inflammation of the eye's middle layer and that would include the iris and its adjacent tissue known as ciliary body. The condition is also termed as iritis or the inflammation of the iris and iridocyclitis which is the inflammation of the iris and the ciliary body. The condition would typically last for less than six weeks; otherwise it becomes a chronic uveitis if it lasts longer than that." https://www.tandurust.com/eye-health/bilateral-uveitis.html (last visited March 11, 2019, at 4:55 p.m.).

[7] "The lacrimal gland is located on the outer portion of the upper eye. The lacrimal gland continually secretes tears which moisten, lubricate, and protect the surface of the eye." *James v. Astrue,* 2013 WL 12109250, *2 n.9 (S.D. Tex. Apr. 8, 2013) (citation omitted). "A common problem is the inflammation or swelling of the lacrimal gland." https://www.apolloclinic/for-patients/services/consultations (last visited March 11, 2019, at 4:58 p.m.).

[8] Iritis is inflammation that affects the iris and is "the most common type of uveitis[.]" https://www.mayoclinic.org/diseases-conditions/iritis (last visited March 12, 2019, at 3:13 p.m.).

recognition of the bilateral eye issues as even non-severe impairments (*see* Tr. 400-01) and no consideration of the effects of these bilateral eye impairments on claimant's residual functional capacity (*see* Tr. 402-03 (ALJ's consideration of the effects of Brownlow's non-severe impairments of status-post remote cervical fracture and hypertension vis-à-vis Plaintiff's residual functional capacity but no similar analysis of Plaintiff's bilateral eye impairments, evidence of which was provided in the record after the ALJ's initial denial of benefits)).

The ALJ makes mention only of the bilateral swelling of Brownlow's lacrimal glands (Tr. 403); however, that cursory mention amounts to mere lip service because despite citing to record evidence that Plaintiff experienced this condition for well in excess of 12 months (*see id.* (citing evidence beginning in February of 2014 and ending in September of 2015)), the ALJ's sole focus was on the cost of the medication Brownlow was prescribed with no mention made whatsoever that Plaintiff's bilateral lacrimal gland enlargement would impose no functional limitations upon Brownlow's ability to perform the nonexertional demands of work (*see id.*). Even more disturbing, the ALJ makes no mention anywhere of (or give any consideration to) the significant evidence of bilateral granulomatous anterior uveitis (*see, e.g.,* Tr. 591-92, 600-01, 665-66, 669, 671),[9] despite

---

[9] The Court would also note that the ALJ made no mention of other eye impairments evident in the records produced after the ALJ's first decision denying benefits, including evidence of angle closure glaucoma (*see, e.g.,* Tr. 592, 669 & 728) and possible sarcoidosis (*see, e.g., id.* at 593, 602, 608, 610, 621 & 671), unless the ALJ's backhanded reference to bilateral lacrimal gland enlargement (Tr. 403) was intended to "encompass" the concern for sarcoidosis. Nevertheless, as aforesaid, the ALJ's brief analysis in her decision contains no indication that Plaintiff's bilateral eye impairments, in combination, would have no "further" impact on Plaintiff's residual functional capacity and, instead, serve to merely underscore the identical residual functional capacity determinations found both in the ALJ's most recent decision on February 9, 2017 (*see* Tr. 402) and her decision on December 20, 2013 (*see* Tr. 94). In other words, the ALJ (Continued)

her recognition that she was to consider "any new evidence submitted" (*see* Tr. 398). This Court finds the ALJ's failure to mention and analyze this crucial evidence wholly inconsistent with the ALJ's finding of a severe impairment of recurrent iritis of the right eye (Tr. 400), particularly since iritis is simply the most common form of uveitis. In other words, this Court can betray of no circumstances in this case that the ALJ could consistently find that recurrent iritis of the right eye was a severe impairment, whereas the significant evidence of bilateral granulomatous anterior uveitis would warrant no ink whatsoever. Regardless, the ALJ's failure to mention and analyze this (and other "eye") evidence and her mere backhanded mention of the bilateral swelling of the lacrimal glands simply muddy the water regarding the RFC determination and certainly provide no foundation for this Court to find that the ALJ has linked her RFC determination to substantial evidence in the record. Stated somewhat differently, without a specific determination by the ALJ in her remand decision that the eye conditions diagnosed (or "feared") in the records produced after December 20, 2013 (including, bilateral granulomatous anterior uveitis, bilateral lacrimal gland enlargement, possible sarcoidosis, and angle closure glaucoma), in combination (whether severe or non-severe), would impose no functional limitations upon Brownlow's ability to perform the nonexertional demands of work, the undersigned is simply without a basis to find that the ALJ has

---

failed to link the evidence produced after her first adverse decision on December 20, 2013, evidence the ALJ herself recognized that this Court had instructed her to consider (Tr. 398), to her RFC determination by specifically determining that these impairments would impose no "additional" functional limitations upon Brownlow's ability to perform the nonexertional demands of work.

(Continued)

sufficiently linked her RFC determination to substantial evidence in the record. Accordingly, this cause is due to be remanded once again to the Commissioner of Social Security for further consideration not inconsistent with this decision.[10]

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 28th day of March, 2019.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

[10] The ALJ, on remand, may find it necessary to obtain the opinion of an eye specialist to assist in navigating the evidence produced following the first denial of benefits, as well as any other relevant evidence of record, in order to determine whether the condition of Plaintiff's eyes (at any relevant time) imposed any limitations not contemplated by the ALJ's RFC determination or whether (and why) that RFC determination finds support in all the relevant evidence of record.